## Brink, Appellant, *v.* Marsh.

*Bounties—Killing of noxious animals—Liability of county—Reim-bursement by commonwealth—Act of April 10, 1907, P. L. 60.*

1. Under the Act of April 10, 1907, P. L. 60, entitled, "An Act creating a reward or bounty for the destruction of certain noxious animals, killed within the commonwealth of Pennsylvania, providing a method for the payment of the same by the several counties of the commonwealth which in turn are to be reimbursed by the common-wealth," etc., payment of bounties are to be made primarily by the county which is to be reimbursed by the state; and the fact there has been no appropriation by the state will not relieve the county from paying the bounty when a proper scalp certificate is presented

*Statutes—Title of act—Construction of statute.*

2. Since the adoption of the constitutional amendments of 1864 the title of an act is necessarily a part of it, and a very important aid to its right construction.

Argued Nov. 20, 1912.  Appeal, No. 141, Oct. T., 1912, by plaintiff, from judgment of C. P. Bradford Co., May Term, 1911, No. 316, for defendant on case stated in suit of R. J. Brink *v.* L. H. Marsh, George N. Bird and Job Griffin, Commissioners of Bradford County.  Before

RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Case stated to determine liability of county to pay scalp certificates.

The court below found the facts to be as follows:

This is an amicable action to determine the right of the plaintiff to a writ of peremptory mandamus against the defendants, directing them to issue two orders of $2.00 each, on the treasurer of said county, for the killing of two wood gray foxes.

The material facts agreed upon in the case stated are as follows:

First. That the defendants are, and on January 13, 1910, were the commissioners of said county.

Second. That on January 12, 1910, the plaintiff in Rome Township, in said county, being a resident thereof, killed two wood gray foxes, and on January 13, 1910, in order to secure the award or bounty provided for in sec. 1 of the act of general assembly of Pennsylvania, produced the pelts before John MEREDITH, J. P., in and for Bradford county, and there made an affidavit that he killed the foxes at the time and place aforesaid.

That the justice, in the presence of an elector, cut the ears off said pelts and burned them.

Third. That he gave to the plaintiff two certificates for $2.00, each for the killing of said foxes, directed to the commissioners, setting forth that the provisions of said act had been complied with.

That such certificates were in proper form and in conformity with the requirements of the said act.

Fourth. That on the same day he presented the certificates to the defendants, and demanded orders on the county treasurer for the payment of the bounty on each, provided for by the said act.

Fifth. That the defendants refused to accept the said certificates, and refused to draw orders on the county treasurer for the payment of said bounty.

Sixth. That the defendants have not kept an account of the applications made to them for the payment of bounties, under said act, nor forwarded to the auditor general of the commonwealth itemized statements of the several amounts directed to be paid, but have refused to draw orders in all cases.

Seventh. On May 20, 1909, R. K. Young, then the auditor general of the state of Pennsylvania, gave notice to the defendants that the legislature had not made any appropriation for the payment of bounties for the killing of noxious animals for the two years beginning June 1, 1909, and that there was no money or fund in the hands of the state treasurer for the payment of the same.

The question submitted for the determination of the court is, if the court be of the opinion that under the foregoing statement of facts it was the duty of the defendants to issue orders on the county treasurer, payable to the plaintiff, directing him to pay the bounties provided for by the act of April 10, 1907, or any other act, when he presented the said certificates to them, in that case an order shall be made by the court, granting a peremptory mandamus against the defendants, commanding them to issue an order to the plaintiff for the sum of $4.00, for the killing of the said foxes; otherwise, to enter judgment in favor of the defendants. Costs to follow judgment in either case.

The first section provides, that from and after the passage of this act there shall be paid by the commonwealth of Pennsylvania, a reward or bounty for the killing, within the commonwealth, of certain noxious animals, as follows:

"For each wild cat the sum of $4.00; for each fox the sum of $2.00; for each weasel or mink the sum of $1.00."

Sections 3 and 4 provide the method by which the person killing these noxious animals may obtain the bounty provided for.

Section 2 prescribes what the person must do who is desirous of obtaining the bounty. It also lays down the

duties of the magistrate before whom the claimant appears.

Section 3 provides, inter alia, that upon the presentation of such certificate (the certificate given by the magistrate to the claimant), in proper form, the commissioner shall give an order for the amount named in such certificate to the person presenting the same, drawn upon the county treasurer, directing him to pay the reward or bounty from the funds in his hands belonging to the said county. We will discuss the form of the certificate presently.

Section 4 provides that the county commissioners shall keep an accurate account of all applications made to them for bounty, and on January 1 and June 1 of each year forward to the auditor general an itemized statement of the several amounts directed by them to be paid between those dates, under the provisions of this act, making affidavit thereto and accompanying the same by sworn statement of the county treasurer, setting forth the fact that the several amounts were actually paid by him in compliance with the said order.

The fourth section also provides that the auditor general shall, if he finds the return in proper form, draw a warrant in favor of such county upon the state treasurer for the amount so claimed and approved, which warrant upon presentation to the state treasurer shall be paid out of the appropriation herein provided for.

Section 6 sets forth that the sum of $50,000, was appropriated for the purpose of carrying the provisions of the act into effect. The act lays the reward or bounty upon the commonwealth and provides the method by which it shall pay these bounties.

The court entered judgment for defendant on case stated and refused the amendment.

*Error assigned* was in entering judgment for defendant on case stated.

*W. P. Wilson,* of *Lilley & Wilson,* with him *L. McPherson,* for appellant.—Neither the county commissioners nor

the county treasurer can refuse to obey the mandate upon the ground that no adequate appropriation has been made by the legislature to reimburse the county: Commonwealth v. Griest, 196 Pa. 396.

*Rodney A. Mercur,* county solicitor, for appellees.—The court will not grant a mandamus to the county commissioners to draw an order upon the treasury, if there is no money in the treasury to pay it: Com. v. Phila. County Comm'rs, 2 Wharton, 286; Collins v. Mercer County Commissioners, 40 Pa. C. C. Rep. 39; Com. v. Lancaster County Commissioners, 6 Binney, 5; Com. v. Philadelphia County Commissioners, 1 Wharton, 1.

OPINION BY RICE, P. J., April 21, 1913:

The facts agreed upon in this case, and the provisions of the Act of April 10, 1907, P. L. 60, under which it arose, are concisely and accurately summarized in the opinion filed by the learned judge of the common pleas; therefore, no comprehensive preliminary restatement of them need be made by us. Two views as to the proper construction of the act are presented. One is that the primary obligation to pay the bounties is laid on the commonwealth, that the county commissioners and the county treasurer of the several counties are made the mere disbursing agents of the commonwealth, and therefore, that, in the absence of a state appropriation sufficient in amount to reimburse the county for the claims presented, payment of them out of the county treasury cannot be enforced. The other view is that the intent and effect of the act are to impose primary liability on the county with the right of reimbursement from the state for the amount of the bounties paid by it. The argument in support of the former construction lays great stress on the words of the first section, "there shall be paid by the Commonwealth of Pennsylvania a reward or bounty for the killing," etc. It is to be noticed on the other hand that since the adoption of the constitutional amendment of 1864, the title of

an act is necessarily a part of it, and a very important aid to its right construction: Eby's Appeal, 70 Pa. 311. "The title of an act is part of it; it limits its scope, and is properly used in interpreting its words:" Perkins v. Philadelphia, 156 Pa. 554. "The subject of the act is expressed in the title; this is essential; the title is part of the act and aids, if need be, in its construction; and if there were any provisions foreign to the subject named it would be void:" Halderman's Appeal, 104 Pa. 251. Hence, the words of the title, "providing a method for the payment of the same by the several counties of the commonwealth, which, in turn, are to be reimbursed by the commonwealth," give strong support to the construction contended for by the appellant. Again, the act makes no provision recognizing or authorizing the person who has earned the bounty to present his claim to any state officer, and no remedy is provided whereby he can enforce payment by the state. By sec. 4, the state's obligation to pay is to the county, not to the person who has earned the bounty. Further great confusion and uncertainty would result if the act were construed to mean that the right to the bounties and the obligation of the county to pay them should cease the very instant the appropriation made by the state to reimburse the counties were exhausted. No words of the act can be pointed to as disclosing that legislative intention. On the contrary, sec. 3 clearly and explicitly provides as follows: "Upon the presentation of such certificate, in proper form, the commissioners of the county shall give an order for the amount named in such certificate to the person presenting the same, drawn upon the county treasurer, directing the payment of the reward or bounty as provided for by this act; and the county treasurer shall at once, upon the presentation of such order, pay the same from the funds in his hands belonging to said county." This language is plain and unambiguous, and suggests no need of construction. It accords perfectly with the language of the title and carries out the idea therein expressed. Nor does a

construction of the clause in accordance with the plain and ordinary meaning of its words result in any inconsistency between it and the clause of the first section above quoted. Both provisions are given full effect by holding that the county is to pay the claimant who has earned the bounty from the funds in the treasurer's hands belonging to the county, and the state is ultimately to pay by reimbursing the county. It is to be borne in mind that the legislature might have imposed absolute liability on the counties without any right of reimbursement from the state. Instead of doing this it provided that the counties should be reimbursed, but provision by adequate appropriation for such reimbursement is not made a condition precedent to the liability of the county. Thus, in Com. ex rel. v. Greist, 196 Pa. 396, it was held that the secretary of the commonwealth cannot allege as ground for refusing to publish a proposed amendment to the constitution, as provided by art. XVIII of the constitution, that no appropriation had been made to defray the cost of publication. The present is a much plainer case for holding the county officers to performance of the duty imposed by the letter of the act, for a fund is designated for the purpose, namely, the money in the hands of the county treasurer belonging to the county, and it is not alleged that this fund is insufficient to enable them to discharge their statutory duty in the present instance. Our conclusion is, that the intent and effect of the act are to impose the primary obligation on the county, and to impose on the state the duty of reimbursement. But, from the very nature of the latter duty, as well as by the express terms of the act, it does not arise until the county has paid; and as was said in the case last cited, it is not to be presumed that the state will not ultimately discharge it.

The judgment is reversed and the record is remitted to the court below with direction to award a peremptory mandamus against the defendants in accordance with the stipulation of the case stated.   .